# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Jesus Eduardo Lopez Silva,

        Plaintiff,

    v.

United States of America,

        Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civ. No. 14-5084 ADM/JSM

_____

Nancy A. Peterson, Esq., St. Paul, MN, on behalf of Plaintiff.

Chad A. Blumenfield, Esq., United States Attorney's Office, Minneapolis, MN, on behalf of
Defendant.

_____

## I. INTRODUCTION

On January 27, 2016, the undersigned United States District Judge heard oral argument

on Defendant United States of America's Motion to Dismiss [Docket No. 20] Plaintiff Jesus

Eduardo Lopez Silva's ("Lopez Silva") Complaint [Docket No. 1].[1]  For the reasons set forth

below, Defendant's Motion is granted.

## II. BACKGROUND

Lopez Silva, a citizen of Mexico, entered the United States as a lawful permanent

resident on May 21, 1992.  Compl. ¶ 9.  On June 11, 2013, Lopez Silva was ordered to be

removed to Mexico due to convictions for possession of a controlled substance and illegal

possession of a firearm.  Blumenfield Decl. [Docket No. 23] Ex. 2 ("Removal Decision") at 1, 5.

The Removal Decision required that an appeal was to be filed by July 11, 2013.  Id.  On July 11,

_____

[1] The American Immigration Council and the National Immigration Project of the
National Lawyers Guild filed an amicus brief in support of Lopez Silva [Docket No. 39].

2013, Lopez Silva filed an appeal of his removal order to the Board of Immigration Appeals. Compl. ¶ 14. Under 8 C.F.R. § 1006.6(a), an appeal automatically stays execution of the removal order while the appeal is pending. 8 C.F.R. § 1006.6(a).

On July 17, 2013, despite Lopez Silva's appeal, Immigration and Customs Enforcement ("ICE") agents took Lopez Silva into custody and relinquished him to the custody of Mexican immigration officials in Nuevo Laredo, Mexico. Compl. ¶ 19. On July 18, 2013, Lopez Silva's counsel spoke to ICE Enforcement and Removal Office Special Agent Chad Powell, who admitted that the Office of Chief Counsel incorrectly advised the Enforcement and Removal Office that Lopez Silva had not filed an appeal. Id. ¶ 23. That same day, in recognition of the mistake, Assistant Chief Counsel Alexandra Tinkham contacted Lopez Silva's counsel to advise that the government would issue an advanced parole document to Lopez Silva and provide him with an airline ticket to return to the United States. Id. ¶ 24. On September 19, 2013, over two months after his wrongful removal, the government returned Lopez Silva to the United States. Id. ¶ 32.

Lopez Silva brings this action under the Federal Torts Claim Act, seeking compensation for harm arising from his removal to Mexico in violation of the automatic stay occasioned by his appeal of the removal order. Id. ¶ 2. Lopez Silva claims that as a result of his unlawful deportation, he feared he would be permanently separated from his family and that his family's economic security would be damaged since he was unable to secure employment in Mexico. Id. ¶¶ 37–39. Lopez Silva also claims that his removal interrupted the medical treatment he was receiving for leg and shoulder injuries, which caused increased pain and suffering. Finally, Lopez Silva attributes his depression and difficulty sleeping to the improper removal. Id. ¶¶

40–42.  Defendant moves to dismiss the Complaint in its entirety.

## III. DISCUSSION

### A.    Motion to Dismiss Standard

Defendant moves to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, which states that a party may move to dismiss a complaint for lack of subject matter jurisdiction. "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990).  The party asserting jurisdiction bears the burden of proving by a preponderance of the evidence that jurisdiction exists.  V S Ltd. P'ship v. Dep't of Hous. & Urban Dev., 235 F.3d 1109, 1112 (8th Cir. 2000).

### B.    Jurisdiction Under 8 U.S.C. § 1252(g)

Defendant argues that because Lopez Silva's alleged injuries arise from the erroneously executed removal order, 8 U.S.C. § 1252(g) divests this Court of subject matter jurisdiction.[2] Lopez Silva responds that § 1252(g) does not apply because his removal was in violation of a mandatory, as opposed to a discretionary, stay of the removal order.  Lopez Silva additionally argues that § 1252(g) is inapplicable because his claims do not arise from the removal order itself.  Rather, Lopez Silva contends that his injuries are independent of the execution of the removal order.

Section 1252(g) provides:

---

[2] Jurisdiction over claims involving the execution of a removal order is given to the courts of appeals pursuant to 8 U.S.C. § 1252(a)(5).

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

Lopez Silva cites <u>Reno v. American-Arab Anti-Discrimination Committee</u>, 525 U.S. 471 (1999), for the proposition that § 1252(g) covers only discretionary removal decisions.  <u>Reno</u>, however, does not expressly support Lopez Silva's assertion.  Rather, <u>Reno</u> held that the scope of § 1252(g) is narrow:

> The provision applies only to three discrete actions that the Attorney General may take: her decision or action to <u>commence</u> proceedings, <u>adjudicate</u> cases, or <u>execute</u> removal orders.
>
> . . .
>
> It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings.

<u>Id.</u> at 482 (emphasis in original and quotation marks omitted).  <u>Reno</u> is silent with regard to an explicit substantive or procedural distinction between mandatory and discretionary decisions or actions.  Indeed, Lopez Silva's contention that § 1252(g) only applies to discretionary decisions has been rejected by multiple courts.  <u>See</u>, <u>e.g.</u>, <u>Foster v. Townsley</u>, 243 F.3d 210 (5th Cir. 2001); <u>Guardado v. United States</u>, 744 F.Supp. 2d 482 (E.D. Va. 2010).

In <u>Foster</u>, a case with facts very much like those presented here, the Fifth Circuit held that § 1252(g) stripped the district court of jurisdiction to hear claims arising from the execution of a removal order in violation of an automatic stay of deportation.  243 F.3d at 211, 214–215.

4

While Lopez Silva attempts to distinguish <u>Foster</u> by arguing that it relied on cases that pre-date <u>Reno</u>, that characterization is incorrect.  In its holding, <u>Foster</u> directly addressed <u>Reno</u> and found that although the Supreme Court "emphasized the importance of preserving the Attorney General's discretionary functions in the three enumerated categories, it did not explicitly state that the provision applies <u>only</u> to review of discretionary decisions by the Attorney General in these areas and not to review of non-discretionary decisions."  <u>Foster</u>, 243 F.3d at 214 (emphasis in original).  Further, § 1252(g) "itself does not distinguish between discretionary and non-discretionary decisions.  Rather, the statute refers to 'any cause or claim' that 'arises from the decision or action by the Attorney General' in the three areas."  <u>Id.</u>; <u>see also</u> <u>Guardado</u>, 744 F.Supp. 2d at 488 ("1252(g) is quite clear that 'no court shall have jurisdiction to hear *any* cause or claim arising from the decision . . . to . . . execute removal orders.'") (emphasis in original).

Lopez Silva nevertheless argues that the Eighth Circuit would not follow <u>Foster</u>, citing <u>Jama v. INS</u>, 329 F.3d 630 (8th Cir. 2004), in support.[3]  <u>Jama</u>, however, addressed the narrow question of whether a plaintiff may challenge the Attorney General's construction of a statute (in that case, whether INS could remove the plaintiff to Somalia without first establishing that Somalia would accept his return).  <u>Id.</u> at 632.  <u>Jama</u> is inapposite in that it involves a determination of a purely legal question of statutory interpretation.  Lopez Silva's argument that this Court retains jurisdiction because § 1252(g) only applies to discretionary decisions is

---

[3] Lopez Silva also relies on <u>Turnbull v. United States</u>, 2007 WL 2153279 (N.D. Ohio, July 23, 2007), in arguing that § 1252(g) distinguishes between discretionary and non-discretionary decisions.  Notably, however, that case focused on the court's concern that the immigration officials consciously flouted the mandatory stay.  <u>See id.</u> at *2.  The Complaint in this case does not allege a deliberate decision to ignore the automatic stay but rather an unfortunate miscommunication, whereby the Office of Chief Counsel mistakenly advised the removal office that Lopez Silva had not filed an appeal.  Compl. ¶ 23.

unpersuasive.

Lopez Silva's second argument fares no better.  "Claims that clearly are included within the definition of 'arising from' . . . [are] those claims connected directly and immediately with a 'decision or action by the Attorney General to . . . execute removal orders.'"  Humphries v. Various Federal US INS Employees, 164 F.3d 936, 943 (5th Cir. 1999).[4]  While Lopez Silva tries to contort the cause of his injuries, the record is uncontroverted that but for the execution of the removal order, Lopez Silva's injuries would not have occurred.  See Guardado, 744 F. Supp. 2d at 488 ("The fact of Plaintiff's removal is what makes his alleged assault an assault, his alleged battery a battery, his alleged false imprisonment a false imprisonment.").  Accordingly, this Court does not have subject matter jurisdiction over Lopez Silva's claims.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Docket No. 20] is **GRANTED**. The Complaint [Docket No. 1] is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  March 11, 2016.

_____

[4] Although, as Plaintiff emphasizes, Humphries was decided before Reno, nothing in Reno suggests that the Fifth Circuit's definition of "arising from" is no longer good law.